# BALTIMORE CITY COURT

Filed March 21, 1890.

## HOWARD BANK
### VS.
### REMAINING EXECUTORS OF HENRY McSHANE.

*Schmucker & Whitelock* and *W. H. Bayless* for plaintiff.

*Samuel Snowden, W. A. Hammond, N. R.* and *R. T. Gill* for defendant.

**PHELPS, J.—**

Gentlemen: The case that has engaged the attention of the Court for the last few days has proved to be one of considerable interest, and of first class importance, in my estimation. It has been created and argued by counsel in a manner so ample and exhaustive as to have left very little room for the Court, in the short time that it has had to examine the interesting subjects presented, to contribute anything new to the discussion.

I therefore propose, this morning, without attempting any extended opinion, which would fall very much in the track of the argument that has been already presented and be mainly a repetition of the authorities cited, to content myself with simply reading the instructions that have been presented by either side and approved.

I have taken the opportunity to examine, with some care, the twenty prayers that have been offered upon both sides. The defense that I have found to be the most formidable, and that has given me the most difficulty, is the one founded upon Mr. Edmond's letter of date January, 1886. The difficulty has been increased by the fact that in the same volume of reports (46 Md.), are expressions used by the Court of Appeals in one case which are scarcely reconcilable with the drift and tenor of the opinions of the same Court in another case, or probably in two other cases. I refer to the case of Rob-

erts as compared with the Forrester case and the Englar case. I have endeavored, to the best of my ability, to come to a satisfactory conclusion upon the question as to whether a communication of the kind stated in the evidence, from the president of this bank, at the time it was made to Henry McShane, in answer to the inquiry that he (McShane), propounded to Mr. Ridgeway, is of such a character as to estop the bank, to discharge the right of action at that time vested in the bank, or to operate as lulling the surety, or in any way impairing or discharging the obligation which the bank then held. I do not think it has had that effect, and for this reason, mainly, that, in my judgment, I have failed to see in the evidence, either in the charter or by-laws—I believe there are no by-laws—or in the usage of this bank, anything to confer upon the president any such power as is assumed in the instruction given in the letter to discharge any vested action in a case like this. The president of the bank is, of course, to a certain extent within the scope of his powers, in the ordinary practice and routine of the bank, the authorized exponent and agent of the bank. But his powers are not unlimited; in fact, they are not of very great importance outside of the routine of the bank. This is a matter which cannot be said to be strictly within the ordinary routine of a bank's business. It cannot be said to be, ordinarily, the duty or right of a bank president to write letters discharging the bond of officers of the bank.

The question, in my mind, turns mainly upon this proposition, whether Mr. McShane had a right, after he received that communication from Mr. Edmunds, to rely upon it without taking the trouble to push the matter any further. It strikes me that any competent lawyer, to whom Mr. McShane might have gone, at that time, with that letter in his hand, and with the inquiry, whether he would advise him, under all the circumstances, to rest upon that letter and to consider that he was discharged from his liability, if there were any upon his part, or that it was not necessary for him to make any detailed investigation into the conduct of Mr. Ridgeway, or of the manner in which he had discharged the duties of his office would have said to him: "No, you had better go further. I would not stop there. Your position is such, that, if there is any defalcation, any abstraction of funds, there is a vested right of action upon this bond for which you are liable. The president (unless there is something to be seen by the usage of the bank, or something contained in the charter of the bank), has not, ordinarily, the right, by writing letters of this kind, to discharge a bond given for the faithful performance of the duties of cashier, or other officer, and it is your right and your duty to prosecute this matter further. You had better ask your principal how he stands with the bank, and you had better see the other officers of the bank. You had better make an investigation into this matter."

I think, therefore, gentlemen, that Mr. McShane was not permitted to rely implicitly upon that notice; nor do I think that the communication had the effect attributed to it of an estoppel, or that it had even the effect of putting the bank in the position it was bound to give him (McShane) notice.

I am aware of the expression that has been cited in the Court's opinion in the Robert's case. But, after considering the cases of Forrester and Englar, particularly the case of Forrester, I think that it will be found that the Court of Appeals is not out of line with the general current of authority; and that the liability that the surety contract, imports in itself, some relationship between himself and the principal; it imports affinity, family relationship, intimate friendship, or mutuality; and it implies, by this import, that the principal, being thus on a footing of supposed familiarity, at least of acquaintance with the surety, he could and should apprise himself, from time to time, of the mode and manner in which the surety is discharging the obligations for which he has guaranteed liability; that, having undertaken a liability of that kind, to protect himself he must, at all times, keep himself advised as to the mode in which the surety is performing those obligations.

This defense has been my principal difficulty in the case. Having disposed of it in the manner indicated, I have not found any great difficulty as to the other defenses that have been raised; and, without going into the details of them, or giving the reasons for the decisions I shall make, which, as I said before, would simply amount to a

repetition of what has been already presented, I will now proceed to read the instructions as I find them:

(Plaintiff's first prayer granted, with this modification: "Unless the jury find the facts stated in the defendant's fourth prayer").

(Defendant's fourth prayer granted).

### The Prayer.

"If the jury find that the $8,133 claimed by the plaintiff in this case was represented by checks, which were for a long time carried by the paying teller as a call loan, and that subsequently promissory notes of responsible persons to an amount more than sufficient to liquidate said sum of $8,133 and all other call loans then being carried by said letter, were delivered to said bank and discounted by it for the bona fide purpose of extinguishing said indebtedness, and the said checks representing said sum of $8,133 were thereupon delivered to said Ridgeway, then the jury may infer therefrom that said indebtedness was thereby paid and extinguished, and if they do so find, then the plaintiff cannot recover in this action."

(The Court) I have inserted, in the sixth line of the defendant's fourth prayer, the word bona fide—"for the bona fide purpose of extinguishing said indebtedness." That is the question that I propose to leave to the jury; whether these paper transactions, that have figured so extensively in the evidence, the two series of notes, the checks drawn against them, the maker's of those notes, and all other matters connected with those note transactions, did, in effect, amount to a substantial extinguishment of the indebtedness of Mr. Ridgeway, and whether it was so intended by the parties. That is the question I propose to leave to the jury.

The next prayer of the plaintiff (third), also drawn in such terms as to take the case from the jury, if they find that the moneys unaccounted for were wilfully wasted, leaving the jury to infer that they were wasted. I have added the same modification to that prayer as in the first prayer.

This prayer (plaintiff's fourth prayer), assumes, as a matter of law—and it is on that ground that I reject it—that the only plaintiff in this case that the Court can recognize is the body of stockholders as distinguished from the officers of the bank. I do not consider that a well settled theory, by any means. I am not satisfied with that theory, and I do not endorse it. I do not consider that the president and directors of a bank are the corporation; I do not mean to say that. I mean to say that the president and directors of the bank represent the corporation within the scope of their authority. Within the line of their duties, within the routine of their duties, they represented the corporation and were authorized to speak and act for the corporation; and, therefore, if notice was given to the president and directors of that bank of any fact, I consider that notice substantially to the bank as notice given to their authorized agents and representatives. Therefore, I can not accept a prayer that ignores any such notice as that, and only contemplates a notice given after a reorganization of the bank at a meeting of the stockholders. I do not care to go into that matter thoroughly. But I think it is pretty well established that the obligation is incumbent upon the stockholders to see to it that they are properly represented; and that is the point of the suggestion that I made to counsel, to discuss the matter from the standpoint that, where there are two innocent parties and one or the other is to be injured by the fraud or conduct of a third, upon whom should the liability ordinarily fall? Why, upon that one who has been most trusted, or by whose neglect the difficulty may have occurred. Now, if stockholders choose to be supine and, after putting in a set of men as directors of a bank or railroad, give themselves no concern as to how they are discharging their duties, and allow them to go on and do pretty much as they please, and after awhile turn them out and put in a new set, I do not know of any principle of law upon which they can repudiate all the acts done by them so long as they held the position they did hold by their authority. So, I reject that prayer.

The next prayer—I believe it is the fifth—is predicated upon the McShane-Edmund's correspondence. It is not necessary to read that; it simply carries out the views I have already alluded to.

The next prayer, which is the sixth, is a prayer that limits and qualifies the effect of what I have just said about the president and directors of a bank being its authorized representatives.

The next prayer I have not marked granted, because there is a blank here that ought to be filled up before it is granted.

The last prayer of the plaintiff is rejected. All the prayers of the defendant are rejected with the exception of the one mentioned.

I ought to refer counsel to Anderson's Law Dictionary, page 107. There are some cases there about the duties of bank presidents.

(The rulings of the Court are excepted to by both sides).